IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JOHN F. KENDLE,

        Plaintiff,

    vs.                          Civil Action 2:15-cv-1295
                                   Judge Frost
                                   Magistrate Judge King

WHIG ENTERPRISES, LLC, *et al.,*

        Defendants.

### OPINION AND ORDER

This matter is before the Court on *Defendant Jason Rutland's Motion to Transfer Venue*, ECF No. 30 ("*Rutland Motion*"); *Motion to Transfer Venue of Defendants Whig Enterprises, LLC, RXPRO of Mississippi, Inc. and Mitchell Chad Barrett*, ECF No. 31 ("*WHIG Motion*"); plaintiff's opposition to both motions, ECF No. 32 ("*Plaintiff's Opposition*"); and the reply brief of defendant WHIG Enterprises, LLC ("*WHIG's Reply*").  For the reasons that follow, the *Rutland Motion* and *WHIG Motion* are **DENIED**.

I.   **Factual Allegations and Procedural History**

Defendant WHIG Enterprises, LLC ("WHIG") is a Florida limited liability company with its principal place of business in Jackson, Mississippi.  *Amended Complaint*, ECF No. 10, ¶ 1.  WHIG's members include, *inter alios*, defendants Mitchell Chad Barrett and David Jason Rutland, who are residents and citizens of Jackson, Mississippi.  *Id.* at ¶¶ 1, 3-4.  Rx Pro Mississippi, Inc. ("Rx Pro"), an affiliate of WHIG, is incorporated under the laws of the State of Mississippi with

its principal place of business in Jackson, Mississippi. *Id*. at ¶ 2. Defendants Barrett and Rutland, as Rx Pro's sole shareholders, control Rx Pro. *Id*. WHIG and Rx Pro are in the business of manufacturing and marketing medical and pharmaceutical products, including compounded medications, which are formulations of individual medications prescribed to provide relief from pain, scars, wounds, migraine headaches, and other physical ailments. *Id*. at ¶¶ 6, 10. WHIG and Rx Pro market their medical products through distributors and salespersons such as plaintiff, a resident of Marietta, Ohio. *Id*. at ¶¶ 5-6.

At all times relevant to the *Amended Complaint*, defendants Barrett and Rutland, individually and on behalf of WHIG and/or Rx Pro, had a continuing business relationship with Axion Therapeutics, LLC ("Axion"), which is located in Cleveland, Ohio, involving the sale of compounded medications. *Id*. at ¶ 11. In the summer of 2013, after learning of plaintiff's sales and marketing activities on Axion's behalf, defendants Barrett and Rutland began communicating with plaintiff, who was located in Ohio, in order to recruit plaintiff to work directly with them and on behalf of WHIG and/or Rx Pro. *Id*. at ¶ 11.

On August 27, 2013, plaintiff and WHIG entered into a consultant agreement and a memorandum of understanding. *Id*. at ¶¶ 12-25. More specifically, following negotiations, plaintiff entered into a Distributor Consultant Agreement with WHIG pursuant to which he would receive a commission on plaintiff's sale of medical products

2

manufactured by WHIG and/or Rx Pro, including compounded medications, by distributing the products in Ohio and throughout the United States. *Id.* at ¶¶ 12-13; Exhibit A (copy of Distributor Consultant Agreement effective September 1, 2013), attached thereto.  This agreement contains, *inter alia*, the following forum-selection clause:

> 11.  GOVERNING LAW.  This Agreement and the employment relationship created by it shall be governed by Florida law.  The parties hereby consent to jurisdiction in Florida for the purposes of any litigation relating to this Agreement.

Exhibit A, p. 5, Article 11, attached to *Amended Complaint*.  Plaintiff and defendant Barrett signed the Distributor Consultant Agreement. *Id.* at p. 5.

Plaintiff and WHIG also entered into a memorandum of understanding ("Memorandum of Understanding") regarding certain physician marketing groups known as "BAMBR Marketing Groups." *Complaint*, ¶¶ 20-27; Exhibit B (copy of Memorandum of Understanding), attached thereto.  Under the BAMBR business model, defendants compensated physicians and other healthcare providers who prescribed WHIG products to their patients by offering the providers ownership interests in BAMBR Marketing Groups.  *Complaint*, ¶ 22.  According to plaintiff, defendants had already begun establishing such groups in Mississippi and Florida and solicited plaintiff to expand the BAMBR business model throughout the United States.  *Id.* at ¶ 23.  In exchange, defendants Barrett and Rutland, individually and on behalf of WHIG and/or Rx Pro, promised plaintiff that he would receive an ownership interest in and a share of the profits earned by the BAMBR

3

program.  *Id*. at ¶ 24.  Defendant Barrett, acting on behalf of WHIG and/or Rx Pro, and plaintiff executed the Memorandum of Understanding, which entitled plaintiff to an ownership interest in BAMBR Marketing Groups and additional compensation for marketing BAMBR stock ownership to qualified physicians for membership in BAMBR.  *Id*. at ¶ 25; Exhibit B, attached to *Amended Complaint*.  Plaintiff successfully enlisted at least three physicians, including one from West Virginia and two from North Carolina, as members.  *Amended Complaint*, ¶ 27.

On February 25, 2014, plaintiff, acting as a marketer for defendants, communicated with defendants Barrett and Rutland about organizing a meeting of distributors in Atlanta, Georgia.  *Id*. at ¶ 35.  Plaintiff alleges that defendants Barrett and Rutland later wrongfully blamed him for promoting the discussion of negative topics during the distributor meeting in Atlanta and "immediately terminated their business relationships with Plaintiff and ceased all communication with him" and terminated his access to defendants  *Id*. at ¶¶ 36-38.  According to plaintiff, defendants Barrett and Rutland contacted plaintiff's sales representatives and encouraged them to terminate existing relationships with plaintiff and work directly with defendants.  *Id*. at ¶ 39.  Despite plaintiff's requests, defendants allegedly failed and refused to pay plaintiff commissions from

> (1) sales procured by plaintiff and his sales team for
> January, 2014, February 2014 and all months to follow until
> all refills on all scripts were exhausted from those made
> in Ohio and throughout the United States (2) commissions
> owed to Plaintiff for refill sales procured by Plaintiff
> and his sales team, and (3) commissions that he would have
> earned in the future but for Defendants' wrongful
> termination of the Distributor Consulting Agreement.

*Id.* at ¶ 40.  Plaintiff also alleges that defendants have failed to pay him for services in connection with the expansion and development of the BAMBR program nationwide and have failed to pay him profits and/or other compensation for plaintiff's actions that were necessary to the establishment of the Rx Pro Compounding pharmacy in Indiana, Pennsylvania.  *Id.* at ¶¶ 41-42.

On April 15, 2015, plaintiff instituted this action, naming as defendants WHIG, Rx Pro, and Messrs. Barrett and Rutland.  *Complaint*, ECF No. 1.  Thereafter, plaintiff filed the *Amended Complaint*, asserting claims of breach of contract (breach of the Distributor Consultant Agreement, the Memorandum of Understanding, and the agreement in connection with the Rx Pro compounding pharmacy in Pennsylvania), unjust enrichment, and tortious interference with contractual and business relationships arising out of defendants' alleged wrongful termination of the parties' medical and pharmaceutical products and services marketing agreement.  All of the defendants have moved to transfer this action to the Northern District of Florida, Pensacola Division.  *See Rutland Motion*, *WHIG Motion*.  The motions to transfer are ripe for resolution.

## II.  Standard

The *Rutland Motion* and *WHIG Motion* seek to transfer this action pursuant to 28 U.S.C. § 1404(a), which provides, in pertinent part, that, "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought[.]"

This Court employs a two-step analysis in resolving motions filed pursuant to § 1404(a).  *See*, *e.g.*, *Pac. Life Ins. Co. v. U.S. Bank Nat'l Ass'n*, No. 1:15-CV-416, 2016 WL 223683, at *2 (S.D. Ohio Jan. 19, 2016); *DRFP, LLC v. Republica Bolivariana De Venezuela*, 945 F. Supp. 2d 890, 902 (S.D. Ohio 2013); *Kay v. Nat'l City Mortg. Co.*, 494 F. Supp.2d 845, 849–50 (S.D. Ohio 2007).  First, the threshold determination is whether the action might have been brought in the proposed transferee court.  *Id*.  "An action 'might have been brought' in a transferee court if: (1) the court has jurisdiction over the subject matter of the action; (2) venue is proper there; and (3) the defendant is amenable to process issuing out of the transferee court."  *SKY Techs. Partners, LLC v. Midwest Research Inst.*, 125 F. Supp.2d 286, 291 (S.D. Ohio 2000) (citations and punctuation omitted).  Under 28 U.S.C. § 1391(b)(2), venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated[.]"

Next, the Court must "evaluate both the convenience of the parties and various public-interest considerations[,]" which means that the Court ordinarily "weigh[s] the relevant factors and decide[s] whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'"  *Atlantic Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, __ U.S. __,  134 S. Ct. 568, 581 (2013) (quoting 28 U.S.C. § 1404(a)).  "The balance of convenience, considering all the

relevant factors, 'should be strongly in favor of a transfer before such will be granted.'" *Kay*, 494 F. Supp. 2d at 850 (quoting *First Bank of Marietta v. Bright Banc Savings Assoc.*, 711 F. Supp. 893, 896–97 (S.D. Ohio 1988)). *See also DRFP, LLC*, 945 F. Supp. 2d at 902 (explaining that the second step of a § 1404(a) analysis requires a court to determine whether, "considering all relevant factors, the balance of convenience and the interest of justice 'strongly' favor transfer") (quoting *Proctor & Gamble Co. v. Team Tech., Inc.*, No. 1:12-cv-552, 2012 WL 5903126, at *3 (S.D. Ohio Nov. 26, 2012)); *Kay*, 494 F. Supp.2d at 849-50.

However, this analysis changes when there exists a valid forum-selection clause, "which 'represents the parties' agreement as to the most proper forum.'" *Id.* (quoting *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)). Accordingly, when the parties have agreed to a valid forum-selection clause, "[o]nly under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Id.*

Finally, the moving party bears "the burden of establishing the need for a transfer of venue." *Dayton Superior Corp. v. Yan*, 288 F.R.D. 151, 165 (S.D. Ohio 2012). *See also Steelcase, Inc. v. Smart Techs., Inc.*, 336 F. Supp. 2d 714, 719 (W.D. Mich. 2004) ("This burden is a heavy one and requires the moving party to show that the balance of factors weighs strongly in favor of transfer."). Ultimately, the decision whether to transfer venue is left to the discretion of the

trial court.  *Id.; Midwest Motor Supply Co., Inc. v. Kimball*, 761 F.
Supp. 1316, 1318 (S.D. Ohio 1991).

**III.  Discussion**

    **A.  Forum-selection clause**

    As discussed *supra*, the Distributor Consultant Agreement contains
a forum-selection clause that provides that the "Agreement and the
employment relationship created by it shall be governed by Florida
law.  The parties hereby consent to jurisdiction in Florida for the
purposes of any litigation relating to this Agreement."  Exhibit A, p.
5, Article 11, attached to *Amended Complaint*.  The parties do not
disagree that this clause is valid and no party argues that the clause
is unreasonable.  *See also M/S Bremen v. Zapata Off-Shore Co.*, 407
U.S. 1, 10 (1972) (agreeing that forum-selection clauses are "prima
facie valid").

    The parties do disagree, however, on the impact, if any, of this
clause on the requests to transfer.  Plaintiff takes the position that
the forum-selection clause at issue in this case is permissive rather
than mandatory and therefore does not require or even support the
transfer of this action to Florida.  *Plaintiff's Opposition*, pp. 4-5,
7-8.  Defendant Rutland argues that the existence of this clause is a
binding agreement, voluntarily entered into by the parties, that
obligates the parties to litigate in Florida and which requires the
transfer of this action to Florida.  *Rutland Motion*, pp. 3-6 (arguing
further that the validity of the clause is the "most significant
factor" under § 1404).  WHIG contends that the forum-selection clause,

8

even if construed as permissive, is an important factor in the § 1404 analysis, impacting considerations of the parties' choice of forum and the convenience of the parties. *WHIG Motion*, pp. 8-10; *WHIG Reply*, pp. 2-4.

"A forum selection clause is mandatory if it clearly indicates that jurisdiction is proper only in the selected forum." *Braman v. Quizno's Franchise Co*., LLC, No. 5:07CV2001, 2008 WL 611607, at *6 (N.D. Ohio Feb. 20, 2008). "By contrast, a permissive forum selection clause merely authorizes jurisdiction in the specified forum, but does not require that forum to be the exclusive venue for litigation." *Id.* Stated differently, where the clause at issue "does not mandate a singular forum, but simply states that the parties consent to the jurisdiction of state and federal courts located in [a particular state,]" the clause is, as a matter of law, permissive. *Hitachi Med. Sys. Am., Inc. v. Bay Harbor MRI, Inc*., No. 5:09CV639, 2009 WL 2252875, at *3 (N.D. Ohio July 28, 2009) (collecting cases). *See also Lopesco Industria De Subprodutos Animais, Ltda v. Free Range Dog Chews, Inc.,* No. 10-CV-10970, 2010 WL 3790179, at *2 (E.D. Mich. Sept. 22, 2010); 14D Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Juris. § 3803.1 (4th ed.) ("Permissive forum selection clauses, often described as 'consent to jurisdiction' clauses, authorize jurisdiction and venue in a designated forum, but do not prohibit litigation elsewhere."). In the case presently before the Court, the forum-selection clause provides that the parties "consent to the jurisdiction in Florida for the purpose of any litigation relating to"

the Distribution Consultant Agreement.  The clause is therefore permissive.  *Id*.

In considering a permissive forum-selection clause in the context of a § 1404(a) motion to transfer, this Court has distinguished *Atlantic Marine*, noting that the forum-selection clause at issue in that case was mandatory.  *Residential Finance Corp. v. Jacobs*, No. 2:13-cv-1167, 2014 WL 1233089, at *3 (S.D. Ohio Mar. 25, 2014) (considering a clause that permitted the plaintiff to sue in Ohio). In so finding, *Residential Finance* acknowledged, but distinguished, the holding of another court in this circuit suggesting that there is no functional difference between permissive and mandatory forum-selection clauses.  *Id*. (citing *United Am. Healthcare Corp. v. Backs*, 997 F. Supp.2d 741 (E.D. Mich. 2014), and noting that the clause in *Backs* expressly waived any claim of improper venue or inconvenient forum).  *Residential Finance* therefore granted "exactly what the[] parties have bargained for - an agreement that prevents, in this case, Defendants from arguing that Ohio is an improper venue[.]"  *Id*. (going on to consider factors under § 1404(a)).

In the case presently before the Court, the permissive forum-selection clause does not require transfer to Florida.  However, the clause does prevent plaintiff from arguing that Florida is an improper venue.  *Id*.  Indeed, *Plaintiff's Opposition* does not dispute that Florida is a proper venue.  Moreover, the record reflects that this action might have been brought in the Northern District of Florida, Pensacola Division, the proposed transferee court.  As discussed

10

*supra*, an action "might have been brought" in a transferee court if, *e.g.*, venue is proper there, *i.e.*, "a substantial part of the events or omissions giving rise to the claim occurred" in that judicial district. *SKY Techs. Partners, LLC*, 125 F. Supp.2d at 291; 28 U.S.C. § 1391(b)(2). Plaintiff alleges that he attended "numerous executive team meetings in Pensacola, Florida and Jackson, Mississippi to devise marketing and sales strategies and to position the company to go public." *Amended Complaint*, ¶ 20. Plaintiff also acknowledges that defendants had established BAMBR marketing groups in Florida. *Id.* at ¶ 23. Moreover, plaintiff entered into the Distributor Consultant Agreement, which underlies some of plaintiff's claims, with WHIG, a Florida company, and WHIG's "affiliates, Florida entities[.]" *See Exhibit A*, p. 1, attached to the *Amended Complaint*. These factual allegations and evidence, combined with the forum-selection clause, satisfy the Court that venue would be proper in the Northern District of Florida, Pensacola Division. Having so concluded, the Court next considers whether the public and private factors strongly weigh in favor of transfer. *Id.*

### B.   Private Factors Under Section 1404(a)

The private interest factors that the Court must consider include

    relative ease of access to sources of proof; availability
    of compulsory process for attendance of unwilling, and the
    cost of obtaining attendance of willing witnesses;
    possibility of view of the premises, if view would be
    appropriate to the action; and all other practical problems
    that make trial of a case easy, expeditious and
    inexpensive.

*Atl. Marine Const. Co.*, 134 S. Ct. at 581 n.6 (quoting *Piper Aircraft*

*Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981) (internal quotation marks omitted)).  The Court must also consider plaintiff's choice of forum. *See*, *e.g.*, *DRFP, LLC*, 945 F. Supp.2d at 902.

### 1.    Plaintiff's chosen forum

"Plaintiff's choice of forum should be given 'great' or 'substantial' weight when considering whether to transfer a case under § 1404(a)." *Trustar Funding v. Mruczynski*, No. 1:09-cv-01747-CAB, 2010 WL 1539759, at *10 (N.D. Ohio Mar. 30, 2010) (quoting *United States v. Cinemark USA, Inc.*, 66 F. Supp. 2d 881, 887 (N.D. Ohio 1999) (internal quotation marks omitted)).  *See also Capitol Specialty Ins. Corp. v. Splash Dogs, LLC*, 801 F. Supp. 2d 657, 672-73 (S.D. Ohio 2011) ("There is thus a strong presumption in favor of a plaintiff's choice of forum that 'may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum.'") (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981)).  "This is especially true where the plaintiff also resides in the chosen forum." *Smith v. Kyphon, Inc.*, 578 F. Supp. 2d 954, 962 (M.D. Tenn. 2008).  *See also Thomas v. Home Depot, U.S.A., Inc.*, 131 F. Supp. 2d 934, 937 (E.D. Mich. 2001) (same).  However, plaintiff's choice of forum is not dispositive. *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 413 (6th Cir. 1998).  A court gives plaintiff's chosen forum little weight "'where none of the conduct complained of occurred in the forum selected by the plaintiff.'" *Keybanc Capital Markets v. Alpine Biomed Corp.*, No. 1:07 CV 1227, 2008 WL 828080, at *7 (N.D. Ohio Mar. 26, 2008) (quoting *Edmison v. Vision Inv. & Dev., LLC*, No.

1:06 CV 1108, 2006 WL 3825149, at *5 (N.D. Ohio Dec. 26, 2006)).

Finally, "[d]istrict courts in the Sixth Circuit generally assign

permissive forum-selection clauses little weight in deciding whether

to transfer venue." *Flight Sols., Inc. v. Club Air, Inc.*, No. 3:09-

CV-1155, 2010 WL 276094, at *3 (M.D. Tenn. Jan. 14, 2010) (collecting

cases).

 In the case presently before the Court, defendant Rutland

characterizes the forum-selection clause as the most significant

factor and contends that, because Ohio bears little or no relationship

to the allegations in the *Amended Complaint*, the existence of the

clause weighs in favor of transfer to the Northern District of

Florida. *Rutland Motion*, pp. 3-7. Similarly, WHIG argues that

plaintiff's choice of forum should be given little weight because even

a permissive forum-selection clause is a manifestation of the parties'

preferences as to a convenient forum. *WHIG Motion*, pp. 8-9; *WHIG

Reply*, pp. 4-6. WHIG further argues that the facts and circumstances

of this case are "more closely related to Florida or locales in the

vicinity of Pensacola, Florida" than to Ohio. *WHIG Motion*, pp. 4-5, 9

(contending, *inter alia*, that WHIG, the only party defendant to the

Distributor Consultant Agreement, is a Florida entity; plaintiff

attended certain executive meetings in Florida; defendants established

BAMBR marketing groups in Florida; and that any alleged breaches of

agreements arose of Florida when defendants Barrett and Rutland took

actions on behalf of WHIG, a Florida entity); *WHIG Reply*, pp. 4-6.

Plaintiff disagrees, arguing that his choice of forum is entitled to

more weight, particularly because he resides in the chosen forum, the forum-selection clause in this case is permissive, and Ohio has a strong connection to plaintiff's claims. *Plaintiff's Opposition*, pp. 2-3, 7-9.

Plaintiff's arguments are well-taken.  It is undisputed that plaintiff resides in his chosen forum. *See*, *e.g.*, *Amended Complaint*, ¶ 5 (alleging that plaintiff resides in Marietta, Washington County, Ohio).  Although the forum-selection clause establishes that the parties consented to the jurisdiction of courts in Florida, this Court has concluded, for the reasons discussed *supra,* that the clause is permissive.  The "little weight" that the Court assigns to this permissive forum-selection clause, *see Flight Sols., Inc.*, 2010 WL 276094, at *3, will not overcome the substantial weight that must be given to plaintiff's chosen forum, in which he resides.

Defendants insist that the Court must assign little weight to plaintiff's choice of forum because Ohio has little or no connection to this action.  This Court disagrees. It was through their ongoing business relationship with Axion Therapeutics, LLC ("Axion"), which is located in Cleveland, Ohio, that defendants Barrett and Rutland learned of plaintiff's sales and marketing activities on behalf of Axion. *Amended Complaint*, ¶ 11.  Defendants Barrett and Rutland routinely communicated with and negotiated the terms of certain business relationships with plaintiff, who resides in Ohio. *Id*. at ¶¶ 11-12, 20-25, 29.  Upon entering into the Distributor Consultant Agreement, defendants Barrett and Rutland gave plaintiff access to

14

WHIG's and Rx Pro's computer systems, which plaintiff accessed from his office in Marietta, Ohio. *Id*. at ¶ 15. Defendants also paid plaintiff through deposits made to plaintiff's bank account in Marietta, Ohio. *Id*. Upon entering into business relationships with defendants, at least defendants Barrett and Rutland knew that plaintiff was engaged in the business of marketing, selling, and distributing medical products while located in Marietta, Ohio, in furtherance of, *inter alia*, the Distributor Consultant Agreement. *Id*. at ¶¶ 5, 7, 18-20. Defendants Barrett and Rutland also attended a meeting with plaintiff in Ohio and visited potential pharmacy sites in Ohio. *Id*. at ¶¶ 29-30. In short, although Florida has a connection to this action, the Court cannot say that Ohio has so little connection to the events giving rise to this action that plaintiff's choice of forum should be utterly discounted. *See Keybanc Capital Markets*, 2008 WL 828080, at *7. Accordingly, consideration of this factor weighs against transfer to the Northern District of Florida.

### 2.  Access to sources of proof

Defendant Rutland generally asserts that, because "the evidence associated with this action[,]" "much of the relevant documentary evidence[,]" and the "vast majority" of documents are located in Mississippi and Florida, transfer of the action is appropriate. *Rutland Motion*, pp. 6-7, 9. However, WHIG and plaintiff do not disagree that, regardless of the location of the relevant documents, modern technology will permit the production of adequate versions of these documents regardless of their location. Thus, the factor of

access to proof is neutral. *See WHIG Motion*, pp. 10-11; *Plaintiff's Opposition*, p. 13; *WHIG Reply*, p. 8.

### 3. Convenience of the party witnesses

Plaintiff asserts that only WHIG is incorporated in Florida and that the individual defendants reside in Mississippi, which is approximately 250 miles away from Pensacola, Florida. *Plaintiff's Opposition*, p. 9. According to plaintiff, the transfer of the case to Pensacola, Florida, would therefore result in a greater total combined distance of travel for the parties. *Id.* at 10. Plaintiff further argues that, even if Pensacola, Florida, is a more convenient forum for defendants, it is greatly more inconvenient for plaintiff and that the Court should not shift that inconvenience to plaintiff. *Id.* at 9-10. For their part, defendants argue that Pensacola, Florida, is a more convenient forum for them and that plaintiff essentially waived any inconvenience argument as to Florida when he signed the Distributor Consultant Agreement. *Rutland Motion*, pp. 6-7; *WHIG Motion*, p. 10; *WHIG Reply*, pp. 7-8.

Defendants' arguments in this regard are well-taken. Defendant Rutland, a Mississippi resident, and WHIG, a Florida limited liability company with its principal place of business in Mississippi, represent that driving to Pensacola, Florida, is more convenient than flying to Columbus Ohio. *See id.* Moreover, as discussed *supra*, the permissive forum-selection clause in this case establishes that plaintiff consented to litigating in Florida. Under these circumstances, the Court is not persuaded by plaintiff's present arguments that Florida

16

is an inconvenient forum. *Cf. Residential Finance Corp.*, 2014 WL 1233089, at *3. Accordingly, this factor favors transfer to the Northern District of Florida.

> **4. Convenience of the non-party witnesses and availability of compulsory process for attendance of unwilling witnesses**

"The convenience of the witnesses, particularly nonparty witnesses important to the resolution of the case, is often cited as the most significant factor in ruling on a motion to transfer under 29 U.S.C. § 1404(a).'" *Residential Fin. Corp.*, 2014 U.S. Dist. LEXIS 42745, at *16 (quoting 15 C.A. Wright, A.R. Miller & E.H. Cooper, Fed. Prac. & Proc. § 3851 (4th ed.)). *See also Nationwide Mut. Fire Ins. Co. v. Barbour*, No. 5:15 CV 456, 2015 WL 5560209, at *3 (N.D. Ohio Sept. 21, 2015) ("The convenience of witnesses is one of the most important factors in determining whether to grant a change of venue under 28 U.S.C. § 1404(a), and the residence of key witnesses is a critical consideration."); *Steelcase, Inc. v. Smart Techs., Inc.*, 336 F. Supp. 2d 714, 720 (W.D. Mich. 2004) ("Convenience of witnesses is perhaps the most important factor in the transfer analysis."). The "party seeking the transfer must clearly specify the essential witnesses to be called and must make a general statement of what their testimony will cover." *Smith v. Kyphon, Inc.*, 578 F. Supp.2d 954, 963 (M.D. Tenn. 2008). *See also Slate Rock Const. Co. v. Admiral Ins. Co.*, No. 2:10-CV-1031, 2011 WL 3841691, at *9 (S.D. Ohio Aug. 30, 2011) ("[A] generalized assertion by a defendant that witnesses reside in, and documents are located in, the proposed transferee district, is

17

generally insufficient to support a change of venue."). A defendant seeking transfer "must also show that witnesses (usually third party witnesses, rather than employees of the defendants) are unwilling to attend a trial in that forum [chosen by plaintiff]." *Id*. *See also Pearle Vision, Inc. v. N.J. Eyes, Inc*., No. 1:08-CV-190, 2009 WL 73727, at *9 (S.D. Ohio Jan. 6, 2009) (noting that the defendants "have [not] offered any evidence that their witnesses would be unable or unwilling to provide testimony at a trial in this district").

Defendant Rutland argues, without specificity, that "witnesses [whom] Defendant Rutland anticipates calling who possess information regarding the Agreement and the negotiations related to the same are based in Florida and Mississippi." *Rutland Motion*, p. 7. *See also id*. at 9 (asserting generally that the "vast majority" of unidentified individual witnesses are located in Florida). WHIG contends that, of the twenty-four witnesses identified by the parties in their Rule 26(a)(1) disclosures, only three reside in Ohio, while ten reside in either Florida or Mississippi, *i.e.*, within a 250-mile radius of Pensacola, Florida. *WHIG Motion*, pp. 4-5 (citing to a list of witness names, the party disclosing that witness, and the location of each witness, which is attached thereto as Exhibit C, pp. 1-2); *WHIG Reply*, pp. 7-8. WHIG therefore argues that this factor either favors transfer or is neutral. *Id*. Plaintiff, however, points out that most of the witnesses identified by WHIG are located in Mississippi and are party witnesses and that only one of them, Wade Walters, is a third-party witness. *Plaintiff's Opposition*, p. 12. According to

18

plaintiff, the only potential witness located in Florida is Joseph
Story, M.D., WHIG's member/manager, who is a party witness.  *Id*.  The
remaining witnesses are non-party witnesses scattered throughout the
United States, *e.g.*, Louisiana, Pennsylvania, North Carolina,
Colorado, Texas, and California.  *Id*.  *See also* Exhibit C, pp. 1-2,
attached to the *WHIG Motion*.  Conversely, Ryan Pojman and Scott
Raybuck, two non-party witnesses, are located in Ohio.  *Id*.  Plaintiff
goes on to point out that WHIG has provided no evidence that any
witness, party or non-party, would be unable or unwilling to provide
testimony in this district and has failed to provide any evidence
regarding each witness's expected testimony and the importance of that
testimony.  *Plaintiff's Opposition*, p. 11.  Plaintiff therefore argues
that defendants have failed to meet their evidentiary burden necessary
to establish non-party witness inconvenience.  *Id*. at 12.

Plaintiff's arguments are well-taken.  Defendants, as the parties
seeking transfer, must do more than simply identify non-party
witnesses who do not live in Ohio.  *See Smith*, 578 F. Supp.2d at 963;
*Slate Rock Constr. Co.*, 2011 WL 3841691, at *9; *Pearle Vision, Inc.*,
2009 WL 73727, at *9.  In the case presently before the Court,
defendants have not clearly specified the essential witnesses to be
called and have not provided a general statement of their testimony.
While WHIG submits a list summarizing witnesses disclosed by the
parties, as well as copies of the parties' Rule 26(a)(1) disclosures,
it is not immediately clear to the Court which of these witnesses are
essential or the nature of their expected testimony.  *See generally*

19

Exhibit C, attached to the *WHIG Motion*.  Similarly, neither defendant Rutland nor WHIG has offered any evidence that any of the third party witnesses are unable or unwilling to provide testimony at a trial in this district.  WHIG concedes "that [it] generally may be the rule" to require affidavit or other evidence specifying the name and intended testimony of relevant non-party witnesses, but nevertheless argues that this requirement "is not strictly enforced" where, as here, little to no discovery has yet taken place.  *WHIG Reply*, pp. 7-8 (citing *GE Capital Franchise Fin. Corp. v. Cosentino*, No. 08-CV-2025, 2009 U.S. Dist. LEXIS 53891 (W.D. N.Y. June 25, 2009)).  However, WHIG relies on authority outside this circuit for this proposition, ignoring case law from this circuit, which requires defendant to provide evidentiary support in connection with this factor.  *See*, *e.g.*, *Smith*, 578 F. Supp.2d at 963; *Slate Rock Constr. Co.*, 2011 WL 3841691, at *9; *Pearle Vision, Inc.*, 2009 WL 73727, at *9.

While defendants have identified no non-party witnesses located in Florida, plaintiff has named two non-party witnesses, Messrs. Pojman and Raybuck, who are located in Ohio.  *Plaintiff's Opposition*, p. 12.  In addition, although many non-party witnesses are located across the United States, it does not appear that travel to Ohio would be materially more difficult for them than would their travel to Florida.  Taking this record as a whole, consideration of this factor weighs against transfer to the Northern District of Florida.

### C.    Public Factors under Section 1404(a)

The Court must also consider the public interest when analyzing

the requests to transfer this action to the Northern District of
Florida.  *See Atlantic Marine Const. Co. v. U.S. Dist. Court for W.
Dist. of Texas*, __ U.S. __,  134 S. Ct. 568, 581 n.6 (2013).  Public
interest factors may include the following:  "the administrative
difficulties flowing from court congestion; the local interest in
having localized controversies decided at home; [and] the interest in
having the trial of a diversity case in a forum that is at home with
the law." *Id*. (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241
n.6 (1981) (internal quotation marks omitted)).  Courts also may
consider the enforceability of the judgment.  *See*, *e.g.*, *Slate Rock
Const. Co. v. Admiral Ins. Co*., No. 2:10-CV-1031, 2011 WL 3841691, at
*9 (quoting *Jumara v. State Farm Ins. Co*., 55 F.3d 873, 878 (3d Cir.
1995)).

It is undisputed that neither forum has any advantage over the
other as to the enforceability of the judgment or relative court
congestion.  Instead, the parties disagree as to which forum has a
greater local interest in the dispute.  Plaintiff takes the position
that, even though the issues presented in this case are not contained
in any one locale, Ohio has a greater interest in the resolution of
the dispute than does Florida. *Plaintiff's Opposition*, p. 13.
Defendant Rutland disagrees, again arguing that this action has very
little relation to Ohio.  *Rutland Motion*, pp. 7-8.  WHIG, however,
concedes that both forums have an interest in this action.  *WHIG
Motion*, p. 11; *WHIG Reply*, pp. 8-9.  This Court agrees and has found
no evidence or argument that either forum has a "materially greater

interest in the determination of the case[.]" *Slate Rock Constr.*, 2011 WL 3841691, at *10.

The parties also disagree whether the familiarity of the trial judge with the applicable law favors Ohio or Florida. Both defendant Rutland and WHIG argue that Florida law governs the dispute and that a judge in Florida would therefore be more familiar with the applicable law. *Rutland Motion*, p. 8; *WHIG Motion*, pp. 11-12; *WHIG Reply*, p. 9. Plaintiff concedes that Florida law governs plaintiff's claim of breach of the Distributor Consultant Agreement (Count I), but argues that Florida law "does not likely govern all of Plaintiff's claims." *Plaintiff's Opposition*, pp. 14-15. Plaintiff also argues that a court's familiarity with applicable law is a minimal factor where there is no indication that the applicable law is unique, novel, or complex. *Id.* at 14 (citing *Midwest Motor Supply v. Kimball*, 761 F. Supp. 1316, 1319 (S.D. Ohio 1991)). This Court agrees.

Where an action "does not appear to present any novel or complex" or "unique" issues under state law, this Court has previously determined that one court's familiarity with the applicable law, standing alone, should not "strongly militate" in favor of transfer. *Midwest Motor Supply*, 761 F. Supp. at 1319 (concluding that Ohio contract law is not so unique as to strongly militate against transfer to another forum). *See also Cincinnati Ins. Co. v. O'Leary Paint Co.*, 676 F. Supp.2d 623, 638 (W.D. Mich. 2009) (stating that "in the absence of any legal issues which seem complex, the necessity for either court to apply another State's law would not be a weighty

22

factor anyway"); *Antioch Co. v. Pioneer Photo Albums, Inc.*, No. C-3-99-270, 2000 WL 988249, at *5 (S.D. Ohio Mar. 13, 2000) (concluding that this Court as well as the Central District of California "are equally able to address each of Plaintiff's claims" where the Ohio statute is a codification of federal law and where the breach of contract claim did not appear to raise novel or complex issues under Ohio law). WHIG nevertheless insists that, "while this case may not involve complex and unique aspects of Florida law, this factor still weighs in favor of transfer." *WHIG Reply*, p. 9 (citing *GE Capital Franchise Fin. Corp. v. Cosentino*, No. 08-CV-2025, 2009 U.S. Dist. LEXIS 53891 (W.D. N.Y. June 25, 2009)). WHIG's reliance on authority outside this circuit, however, does not persuade this Court that this factor strongly favors transfer. *See*, *e.g.*, *Midwest Motor Supply*, 761 F. Supp. at 1319; *Cincinnati Ins. Co.*, 676 F. Supp.2d at 638; *Antioch Co.*, 2000 WL 988249, at *5.

Accordingly, considering the record as a whole, the balance of factors does not weigh strongly in favor of transfer to the Northern District of Florida. The permissive forum-selection clause does not outweigh the substantial weight accorded plaintiff's chosen forum, *i.e.*, Ohio, where plaintiff resides. Moreover, as discussed *supra*, although the convenience of the parties favors transfer, the convenience of non-party witnesses, one of the most important considerations, weighs against transfer. Finally, the applicability of Florida law does not militate strongly in favor of transfer. Under all these circumstances, then, the Court cannot say that defendants

23

have met their heavy burden of showing that the balance of factors weighs strongly in favor of transferring this action to the Northern District of Florida.

   **WHEREUPON**, *Defendant Jason Rutland's Motion to Transfer Venue*, ECF No. 30, and the *Motion to Transfer Venue of Defendants Whig Enterprises, LLC, RXPRO of Mississippi, Inc. and Mitchell Chad Barrett*, ECF No. 31, are **DENIED**.

January 29, 2016                    *s/Norah McCann King*
                                Norah M<sup>c</sup>Cann King
                                United States Magistrate Judge