# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

JOHN F. KENDLE,

      Plaintiff,

  v.                                      Case No.: 2:15-cv-1295
                                        JUDGE SMITH
                                        Magistrate Judge Jolson

WHIG ENTERPRISES, LLC, *et al.*,

      Defendant.

## OPINION AND ORDER

This matter is before the Court on the Motions to Dismiss of Defendants WHIG Enterprises, LLC ("WHIG"), RxPro of Mississippi, Inc. ("RxPro"), Mitchell Chad Barrett ("Barrett"), and David Jason Rutland ("Rutland"). Defendants have moved this Court to dismiss the Plaintiff's Amended Complaint as against Barrett for lack of personal jurisdiction (Doc. 36) and as against Rutland for lack of personal jurisdiction (Doc. 37). Plaintiff John F. Kendle opposed Barrett and Rutland's Motions to Dismiss (Doc. 42), to which Barrett and Rutland filed their respective replies (Docs. 46 and 47). Barrett and Rutland's Motions are fully briefed and ripe for review. For the following reasons, Barrett and Rutland's Motions to Dismiss are **DENIED**.

      **I.**    **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

This case arises out of the alleged wrongful termination of the business relationship between Plaintiff and WHIG, RxPro, Barrett, and Rutland (collectively, the "Defendants"). Plaintiff also alleges Defendants tortiously interfered with Plaintiff's contractual and business relationships. (Doc. 10, Am. Compl. at ¶¶ 35–38). WHIG is a Florida limited liability company

with its principal place of business in Jackson, Mississippi. (*Id.* at ¶ 1). Plaintiff alleges WHIG's members include Barrett and Rutland, who are residents and citizens of Jackson, Mississippi. (*Id.* at ¶¶ 1, 3–4). RxPro, an affiliate of WHIG, is incorporated under the laws of the State of Mississippi with its principal place of business in Jackson, Mississippi. (*Id.* at ¶ 2). Barrett and Rutland, as RxPro's sole shareholders, control RxPro.[1] (*Id.*). WHIG and RxPro are in the business of manufacturing and marketing medical and pharmaceutical products, including compounded medications. (*Id.* at ¶¶ 6, 10). WHIG and RxPro market their medical products through medical distributors and salespersons like Plaintiff, an Ohio resident. (*Id.* at ¶¶ 5–6).

At all times relevant, Barrett and Rutland, individually and on behalf of WHIG and/or RxPro, had a continuing business relationship involving the sale of compounded medications with Axion Therapeutics, LLC ("Axion"), which is located in Cleveland, Ohio. (*Id.* at ¶ 11). In the summer of 2013, after learning of the Plaintiff's sales and marketing activities on Axion's behalf, Barrett and Rutland began communicating with Plaintiff to recruit him to work directly with them on behalf of WHIG and/or RxPro. (*Id.*).

On August 27, 2013, Plaintiff entered into a Distributor Consultant Agreement (the "DCA") with WHIG to receive a commission on Plaintiff's sale of medical products manufactured by WHIG and/or RxPro, including compounded medications by distributing the products in Ohio and throughout the United States. (*Id.* at ¶ 13; Doc. 10-1, DCA). Plaintiff and WHIG also entered into a memorandum of understanding ("Memorandum of Understanding") regarding certain physician marketing groups known as "BAMBR Marketing Groups." (Doc. 10, Am. Compl. at ¶ 25). Under the BAMBR business model, Defendants compensated

---

[1] Rutland denies this allegation in both his Answer and his briefing. However, at this stage, all factual allegations must be viewed in the light most favorable to the nonmovant.

physicians and other healthcare providers who prescribed WHIG products to their patients by offering the providers ownership interests in BAMBR Marketing Groups. (*Id.* at ¶ 22).

According to Plaintiff, Defendants had already begun establishing such groups in Mississippi and Florida and solicited Plaintiff to expand the BAMBR business model throughout the United States. (*Id.* at ¶ 23). In exchange, Barrett and Rutland, individually and on behalf of WHIG and/or RxPro, promised Plaintiff he would receive an ownership interest in and share of the profits earned under the BAMBR. (*Id.* at ¶ 24). After exchanging negotiations communications with Plaintiff at his home office in Marietta, Ohio, Barrett and Rutland, individually and on behalf of WHIG and/or RxPro, designated Plaintiff as an "original stockholder" in future BAMBR Marketing Groups, entitling him to an ownership interest and to additional compensation for marketing BAMBR stock ownership to qualified physicians for membership in BAMBR. (*Id.* at ¶ 25). Plaintiff successfully enlisted at least three physicians, including one from West Virginia and two from North Carolina, as members. (*Id.* at ¶ 27).

On February 25, 2014, Plaintiff, acting as a marketer for Defendants, communicated with Barrett and Rutland about organizing a meeting of distributors in Atlanta, Georgia. (*Id.* at ¶ 35). Plaintiff alleges Barrett and Rutland later wrongfully blamed him for promoting the discussion of negative topics at the distributor meeting in Atlanta and "immediately terminated their business relationship with Plaintiff and ceased all communication with him" and terminated his access to Defendant's computer and information systems. (*Id.* at ¶¶ 36–38). According to Plaintiff, Barrett and Rutland contacted Plaintiff's sales representatives and encouraged them to terminate existing relationships with Plaintiff and work directly with Defendants. (*Id.* at ¶ 39). Despite Plaintiff's demands, Defendants allegedly failed and refused to pay Plaintiff's commissions from:

>(1) sales procured by Plaintiff and his sales team for January, 2014, February, 2014 and all months to follow until all refills on all scripts were exhausted from those made in Ohio and throughout the United States; (2) commissions owed to Plaintiff for refill sales procured by Plaintiff and his sales team; and (3) commissions that he would have earned in the future but for Defendants' wrongful termination of the Distributor Consulting Agreement.

(*Id.* at ¶ 40). Plaintiff also alleges Defendants have failed to pay him for services in connection with the expansion and development of the BAMBR program nationwide and have failed to pay him profits and/or compensation for Plaintiff's actions that were necessary to the establishment of the RxPro Compounding Pharmacy in Indiana, Pennsylvania. (*Id.* at ¶¶ 41–42).

On April 15, 2015, Plaintiff instituted this action, naming as defendants WHIG, RxPro, Barrett, and Rutland. (Doc. 1, Compl.). Following this, Plaintiff filed an Amended Complaint, asserting claims of breach of contract (breach of the DCA, the Memorandum of Understanding, and the agreement in connection with the RxPro compounding pharmacy in Pennsylvania), unjust enrichment, and tortious interference with contractual and business relationships arising out of Defendants' alleged wrongful termination of the parties' medical and pharmaceutical product and services marketing agreement. (Doc. 10, Am. Compl.). Barrett and Rutland have moved the Court for dismissal from this action, in their individual capacities, for lack of personal jurisdiction. The motions to dismiss are ripe for resolution.

## II. STANDARD OF REVIEW

Barrett and Rutland bring their motions pursuant to Federal Rule of Civil Procedure 12(b)(2).[2] When confronted with a Rule 12(b)(2) motion, "[t]he plaintiff bears the burden of establishing the existence of jurisdiction." *Estate of Thompson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 360 (6th Cir. 2008) (citing *Brunner v. Hampson*, 441 F.3d 457, 462

---

[2] Rutland additionally moved under Federal Rule of Civil Procedure 12(b)(3) to dismiss for improper venue. While the parties were briefing the present Motions to Dismiss, this Court denied Defendants' Motions to Change Venue (Doc. 40, Op. and Order). Accordingly, Rutland's Rule 12(b)(3) arguments will not be revisited here.

(6th Cir. 2006)). When the Court resolves a Rule 12(b)(2) motion based on "written submission and affidavits . . . rather than resolving the motion after an evidentiary hearing or limited discovery, the burden on the plaintiff is 'relatively slight,' . . . and 'the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal.'" *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (quoting *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988); *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)).[3] Under such circumstances "the pleadings and affidavits submitted must be viewed in a light most favorable to the plaintiff, and the district court should not weigh 'the controverting assertions of the party seeking dismissal.'" *Id.* (quoting *Theunissen*, 935 F.2d at 1459). If "the plaintiff's allegations of fact establish a *prima facie* case of personal jurisdiction, the inquiry ends; a court does not weigh controverting factual allegations of the defendant." *Highway Com. Servs., Inc. v. Zitis*, No. 07-cv-1252, 2008 WL 1809117, at *2 (S.D. Ohio Apr. 21, 2008) (Holschuh, J.) (citing *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996); *Serras v. First Tenn. Bank Nat'l Assoc.*, 875 F.2d 1212, 1214 (6th Cir. 1989)). However, factual allegations of the defendant which are consistent with the plaintiff's allegations may be considered. *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 153 (6th Cir. 1997).

Although Plaintiff's *prima facie* burden is relatively slight, the Court must still find that "'[p]laintiff has set forth **specific facts** that support a finding of jurisdiction in order to deny the motion to dismiss.'" *Palnik v. Westlake Entm't, Inc.*, 344 F. App'x 249, 251 (6th Cir. 2009) (quoting *Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506, 510 (6th Cir. 2006)) (emphasis

---

[3] This Court has three options when considering a 12(b)(2) motion, it can "decide the motion upon the affidavits alone, it may allow discovery in aid of deciding the motion, or it may conduct an evidentiary hearing to resolve the factual questions." *Perkins v. Liberty Mut. Ins. Co.*, No. 06-cv-00030, 2006 WL 1697630, at *1 (S.D. Ohio June 20, 2006) (Abel, M.J.) (internal citations omitted). Here, the parties never requested an evidentiary hearing on Barrett and Rutland's Motions to Dismiss; therefore, the *prima facie* standard generally governs. *See Morrison v. Taurus Int'l Co.*, No. 11-cv-322, 2012 WL 5493962, at *2, n.1 (S.D. Ohio Nov. 13, 2012) (Black, J.).

5

added). Thus, "it remains the plaintiff's burden and the complaint must have 'established with reasonable particularity' those specific facts that support jurisdiction." *Id.* (quoting *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002)). Consequently, the rules are designed in part to protect potential defendants from a "plaintiff's bald allegation of jurisdictional facts." *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989).

"In diversity cases, federal courts apply the law of the forum state to determine whether personal jurisdiction exists." *Nationwide Mut. Ins. Co. v. Tryg Intern. Ins. Co., Ltd.*, 91 F.3d 790, 793 (6th Cir. 1996) ("*Tryg*") (citations omitted). In order for personal jurisdiction to be proper, "both the state['s] long-arm statute and constitutional due process requirements" must be met. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000). As the Sixth Circuit has noted, "Ohio's long-arm statute is not coterminous with federal constitutional limits." *Estate of Thompson*, 545 F.3d at 361 (citing *Calphalon Corp.*, 228 F.3d at 721). Thus, for the Court to have personal jurisdiction, it must find that the requirements of both Ohio's long-arm statute and constitutional due process are met. *Id.*

### III. DISCUSSION

Barrett and Rutland brought two separate motions arguing that Plaintiff could not establish personal jurisdiction over either of them in their individual capacity because they have insufficient contacts with Ohio. (*See* Docs. 36 and 37). Although the Defendants filed separate motions, they are considered together in this Opinion and Order.

Plaintiff alleges personal jurisdiction over Barrett and Rutland is proper because they, in their individual capacity, reached out and purposefully availed themselves of the privilege of Ohio law through the various agreements they reached with Plaintiff in Ohio. Plaintiff alleges

6

Barrett and Rutland learned about him through each party's respective business relationships with Axion, that Barrett and Rutland knew Plaintiff was located in Ohio, and they initiated negotiations to work with Plaintiff directly to utilize his medical sales contacts in Ohio and elsewhere. (Doc. 42-1, Kendle Decl. at ¶ 2–4; Doc. 10, Am. Compl. at ¶ 11). Plaintiff alleges Barrett and Rutland acted in their individual capacity because they did not make it clear to Plaintiff on whose corporate behalf they were acting, if any, at any particular time and communications were undertaken in their personal business interests generally, regardless of the specific corporate entity involved. (Doc. 10, Am. Compl. at ¶ 7). He alleges, instead, that Barrett and Rutland's focus was at all times on Plaintiff's utilization of his medical sales business to expand their businesses, regardless of which specific corporate entity might be involved and Barrett and Rutland frequently referred to him as their business "partner." (*Id.* at ¶ 8). Plaintiff alleges that Barrett and Rutland's alleged tortious interference with Plaintiff's business and contractual relations caused tortious injury in Ohio. (*Id.* at ¶ 13).

As noted above, "[t]he exercise of personal jurisdiction is valid only if it meets both the state long-arm statute and constitutional due process requirements." *Calphalon Corp.*, 228 F.3d at 721 (citing *Tryg*, 91 F.3d at 793). Due process requirements can generally be met with either specific or general jurisdiction, but Ohio does not recognize general jurisdiction over non-residents. *Dayton Superior Corp. v. Yan*, 228 F.R.D. 151, 160 (S.D. Ohio 2010) (Rose, J.) (citing *Signom v. Schenck Fuels, Inc.*, No. C-3-07-037, 2007 WL 1726492, at *2 (S.D. Ohio June 13, 2007) (Rose, J.)). The Court will address Ohio's long-arm statute and constitutional due process requirements in turn.

**A.      Ohio Long-Arm Statute**

The first step in determining whether this Court has jurisdiction over Rutland and Barrett requires an analysis of the Ohio long-arm statute. As noted above, "[u]nlike other jurisdictions,

7

Ohio does not have a long-arm statute that reaches to the limits of the Due Process Clause, and the analysis of Ohio's long-arm statute is a particularized inquiry wholly separate from the analysis of Federal Due Process law." *Conn v. Zakharov*, 667 F.3d 705, 712 (6th Cir. 2012). Instead of relying on the language found in the Due Process Clause, the Ohio legislature has enacted a list of circumstances that subject defendants to specific jurisdiction in Ohio courts. Ohio Rev. Code § 2307.382. Notably, "[w]hen jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him." Ohio Rev. Code § 2307.382(C). Plaintiff argues that this Court's exercise of personal jurisdiction over the Defendants is proper under Ohio Revised Code §§ 2307.382(A)(1), (3), and (6).

Under Ohio Revised Code § 2307.382(A)(1), a court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the persons: "[t]ransacting any business in this state." The Supreme Court of Ohio has held that the statute is worded "very broadly," and permits "jurisdiction over nonresident defendants who are transacting any business in Ohio." *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St. 3d 73, 75, 559 N.E.2d 477, 480 (1990). "'Transact', . . . means to *prosecute negotiations;* to carry on business; *to have dealings* . . . The word embraces in *its meaning the carrying on or prosecution of business negotiations* but it is a *broader term than the word 'contract' and may involve business negotiations* which have been either wholly or partly brought to a conclusion . . . ." *Id.* (quoting Black's Law Dictionary (5 Ed.1979) 1341) (emphasis in original). For Ohio Revised Code § 2307.382(A)(1) to confer jurisdiction, the cause of action must arise from a transaction of business in the State of Ohio. *Brunner v. Hampson*, 441 F.3d 457, 464 (6th Cir. 2006).

Plaintiff repeatedly alleges Barrett and Rutland transacted business in Ohio. Specifically, that Defendants had a historical relationship with Axion in Cleveland, Ohio, and through that relationship, reached out to Plaintiff to recruit him to work directly with them. (Doc. 42-1, Kendle Decl. at ¶ 2–4). He also alleges Defendants knew he was located in Ohio and frequently called, emailed, and texted Plaintiff in Ohio related to a variety of business transactions. (*Id.* at ¶ 10). Plaintiff alleges he was paid under the DCA by direct deposit in Ohio and that Defendants understood and expected that he would use his "extensive business contacts in Ohio and elsewhere in furtherance of the agreements they reached with him." (*Id.*). Finally, Plaintiff alleges that in the fall of 2013, Barrett traveled to Ohio to meet with Plaintiff in order to address various business-related matters, including visiting a pharmacy in Lancaster, Ohio, with Plaintiff as a possible new location for the RxPro compounding pharmacy. (*Id.* at ¶¶ 11–12).

Barrett alleges that he does not have individual contacts with Ohio sufficient to establish personal jurisdiction over him in Ohio courts because he: (1) has never resided in Ohio; (2) has never visited Ohio for personal reasons, in furtherance of personal-related business operations, or on behalf of WHIG or RxPro; (3) has never had personal employees or agents located in Ohio; (4) does not have any personal business operations or interest in Ohio; and (5) does not own, possess, or lease any real property in Ohio. (Doc. 36-1, Barrett Decl. at ¶¶ 2, 7–12). Barrett alleges that his communications with Plaintiff were solely in his corporate, representative capacity. (*Id.* at ¶ 6). He concedes that he did make a trip to Ohio to meet with Plaintiff, but alleges he did so "in his corporate, representative capacity on behalf of a party that is not even named in this lawsuit, World Health Industries, Inc." and the visit did not relate to business transactions in Ohio. (*Id.* at ¶ 13).

9

Rutland also alleges he has no independent contacts with Ohio. He contends that he has never been domiciled in Ohio, does not possess an Ohio driver's license, has never owned property or paid rent to anyone in Ohio, and has no family or friends in Ohio. (Doc. 37-1, Rutland Decl. at ¶¶ 3–5). He contends that he does not have offices, statutory agents, telephone listings, mailing addresses, bank accounts, licenses, or other operations in Ohio. (*Id* at ¶¶ 6–7). Finally, Rutland alleges that he has never even been in the State of Ohio, nor does he have any offices or employees there. (*Id.* at ¶¶ 8, 10).

The plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal. Barrett and Rutland challenge the allegations that their actions constitute "transacting business in this state" under the Ohio long-arm statute. They each repeatedly argue that they do not, in their individual capacity, have contacts with Ohio sufficient to establish personal jurisdiction. Barrett and Rutland claim they were acting in their corporate, representative capacity at all times relevant. The Court, however, may only consider factual allegations of the Defendants which are consistent with the plaintiff's allegations. *Kerry Steel*, 106 F.3d at 153.

Ohio courts, and this Court interpreting Ohio law, have found that an individual transacted business within the meaning of § 2307.382(A)(1) when he "corresponded regularly with an Ohio company and regularly emailed and called plaintiffs in Ohio." *MedChoice Fin., LLC v. ADS All. Data Sys., Inc.*, No. 2:11-cv-212, 2012 WL 995309, at *6 (S.D. Ohio Mar. 22, 2012) (Frost, J.). In *MedChoice*, the statute was satisfied where the individual, out-of-state defendant participated in telephone conferences in Columbus, frequently called and emailed personnel located in Ohio, and submitted charges to a bank account in Ohio in compliance with the underlying contract. *Id.* This Court, citing *MedChoice*, reached a similar conclusion in

10

*Redhawk Glob., LLC v. World Projects Int'l*, No. 2:11-cv-666, 2012 WL 6032951, at *6 (S.D. Ohio Dec. 4, 2012) (Sargus, C.J.)).  This Court has also held that "where a nonresident 'initiates, negotiates a contract, and through a course of dealing becomes obligated to make payments to an Ohio corporation,' that nonresident was 'transacting any business in [Ohio]' for purposes of the long-arm statute." *Franklin Prods., Inc. v. Gen. Nutrition Corp.*, No. 2:05-cv-1061, 2007 WL 2462665, at *4 (S.D. Ohio Aug. 27, 2007) (Frost, J.) (quoting *Mustang Tractor & Equip. Co. v. Sound Envtl. Serv., Inc.*, 104 Ohio Misc. 2d 1, 727 N.E. 2d 977, 981 (Ohio Com. Pl. 1999) (quoting *Hammill Mfg. Co. v. Quality Rubber Prod., Inc.*, 612 N.E.2d 472, 475 (Ohio Ct. App. 1992))).

Ohio Revised Code § 2307.382(A)(1) provides an extremely broad basis to confer jurisdiction.  In cognizance thereof, this Court and Ohio courts alike have stated "[w]ith no better guideline than the bare wording of the statute to establish whether a nonresident is transacting business in Ohio, the court must, therefore, rely on a case-by-case determination." *Genesis Ins. Co. v. Alfi*, 425 F. Supp. 2d 876, 894 (S.D. Ohio 2006) (Sargus, C.J.) (citing *U.S. Sprint Communications Ltd. Partnership v. Mr. K's Foods, Inc.*, 68 Ohio St.3d 181, 185, 624 N.E.2d 1048 (1994)).  It is the Court's opinion that Plaintiff has alleged significant facts that, if construed in a light most favorable to him, sufficiently establish that the cause of action arises from the Barrett and Rutland's transacting business in the state of Ohio.  Plaintiff alleges that Barrett and Rutland, in their individual capacities, knew Plaintiff was located in Ohio and frequently called, emailed and texted Plaintiff in Ohio concerning a variety of business transactions.  Plaintiff alleges he was paid under the DCA by direct deposit in Ohio and that Defendants, including Barrett and Rutland in their individual capacities understood and expected that he would use his extensive business contacts in Ohio and elsewhere in furtherance of the

agreements they reached with him. Accordingly, when viewing Plaintiff's factual allegations in a light most favorable to him, the Court finds that Plaintiff has made a *prima facie* showing that jurisdiction is appropriate under § 2307.382(A)(1).

The final step in the Court's long-arm statute analysis is determining whether the fiduciary shield doctrine precludes this Court from exercising jurisdiction over Barrett and Rutland. The fiduciary shield doctrine is a feature of Ohio state law which "provides that corporate employees performing acts in their corporate capacity are not subject to the personal jurisdiction of a court for such acts." *Heritage Funding & Leasing Co. v. Phee*, 120 Ohio App.3d 422, 430, 698 N.E.2d 67 (10th Dist. 1997). The Sixth Circuit has held that "where an out-of-state corporate officer 'is actively and personally involved in the conduct giving rise to the claim, the exercise of personal jurisdiction should depend on traditional notions of fair play and substantial justice; *i.e.*, whether she purposely availed herself of the forum and the reasonably foreseeable consequences of that availment.'" *Flynn v. Greg Anthony Constr. Co.*, 95 F. App'x 726, 740 (6th Cir. 2003) (quoting *Balance Dynamics Corp. v. Schmitt Indus., Inc.*, 204 F.3d 683, 698 (6th Cir. 2000)).

Barrett and Rutland posit the same arguments under this theory that they have asserted against this Court exercising jurisdiction over them in general. That is, they claim that all of their acts were performed on behalf of WHIG and/or RxPro, rather than in their individual capacities. For the same reasons stated above, Barrett and Rutland's position is not well-taken. Plaintiff has sufficiently alleged that it was unclear whether Barrett and Rutland were conducting business on behalf of a corporate entity or in furtherance of their individual interests. As discussed in greater detail below, the Court concludes that exercising jurisdiction over Barrett and Rutland does not offend traditional notions of fair play and substantial justice. Accordingly,

having found jurisdiction to be proper under § 2307.382(A)(1), the Court need not consider Plaintiff's arguments concerning §§ 2307.382(A)(3) and (A)(6).

**B.     Due Process**

"[T]he Due Process Clause requires that the defendant have sufficient 'minimum contact[s]' with the forum state so that finding personal jurisdiction does not 'offend traditional notions of fair play and substantial justice.'" *Conn*, 667 F.3d at 712 (6th Cir. 2012) (quoting *Third Nat'l Bank v. WEDGE Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989)). In determining whether minimum contacts exist and the traditional notions of fair play and substantial justice are satisfied, the Court must undertake a three-part analysis. First, the Court must determine whether the defendant "purposefully avail[ed] himself of the privilege of acting in the forum state." *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). This requirement safeguards a defendant from being hailed into a jurisdiction "solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or person." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal quotations omitted). While a defendant need not be physically present to meet this standard, he must have deliberately engaged in significant activities or created continuing obligations with the state. *See id.* at 475–76.

Second, the Court must consider whether the cause of action arose from the defendant's activities there. "If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts." *See Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002) (quoting *CompuServe*, 89 F.3d at 1267). "[T]he 'arising out of' factor 'requires only that the cause of action, of whatever type, have a substantial connection with the defendant's in-state activities.'" *Fortis Corp. Ins. v. Viken Ship Mgmt.*, 450 F.3d 214, 222 (6th Cir. 2006) (quoting *Bird*, 289 F.3d at 875 (internal quotations omitted)).

Third, the Court must determine whether the defendant's acts or consequences thereof have "a substantial enough connection to the forum state to make the exercise of jurisdiction over the defendants reasonable." *S. Mach.*, 401 F.2d at 381. This third prong requires the Court to consider whether exercising its jurisdiction would offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). This analysis involves the evaluation of several factors including the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the overall interest of securing the most efficient resolutions of controversies. *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 113 (1987) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)). The Court will address each of these three considerations in turn.

### 1. Purposeful Availment

This Court finds that Plaintiff has set forth a *prima facie* case that Barrett and Rutland purposefully availed themselves of the privilege of conducting business within Ohio. Barrett and Rutland argue that there is no purposeful availment because they did not conduct any business in Ohio in their personal capacity. However, Plaintiff has alleged sufficient facts that this Court finds Plaintiff has set forth a *prima facie* case that Barrett and Rutland conducted business in Ohio in their individual capacities. This case is similar to *Cole v. Mileti*, in which the court found that personal jurisdiction in Ohio was proper over a California resident conducting business with an Ohio resident. 122 F.3d 433 (6th Cir. 1998). The court found such contacts are sufficient under due process "[i]f, as here, a nonresident defendant transacts business by negotiating and executing a contract via telephone calls and letters to an Ohio resident, then the defendant has purposefully availed himself of the forum by creating a continuing obligation in Ohio." *Id.* at 436.

The Court finds that the analysis from *Cole* applies in this case.  As previously mentioned Plaintiff alleges that Barrett and Rutland sought out Plaintiff and entered several contracts and agreements, including the DCA, in the course of conducting business.  (Doc. 10, Am. Compl. at ¶ 13).  Plaintiff negotiated the terms of all of these agreements with Barrett and Rutland from Ohio.  (Doc. 42-1, Kendle Decl. at ¶ 16).  Plaintiff was paid pursuant to these agreements by wire transfers to his bank account in Ohio.  (Doc. 10, Am. Compl. at ¶ 15).  Finally, due to the unique circumstances of their dealings which intermingled existing corporate entities and discussion of future ventures, in which Plaintiff was frequently referred to as a "partner," Barrett and Rutland did not make it clear to Plaintiff on whose corporate behalf they were acting, if any, at any particular time.  (Doc. 42, Kendle Decl. at ¶¶ 7, 8).  In light of these allegations, which are to be construed in a light most favorable to the Plaintiff, the Court finds that Barrett and Rutland purposefully availed themselves of conducting business in Ohio in their individual capacities.

### 2. Claims Arising from Contacts

As the Court determined above, Plaintiff's claims are directly and substantially related to the business relationship he had with Barrett and Rutland.  *See Brunner*, 441 F.3d at 465 ("[W]e are left with the logical inference that Ohio's long-arm statute has less reach than the Due Process Clause because of a more restrictive interpretation of the 'arising from' prong.").  As the Court's long-arm statue analysis concerned the "more restrictive" interpretation, there is no doubt the instant allegations arise from the contacts Barrett and Rutland had in Ohio under Due Process law.

### 3. Reasonableness of Jurisdiction

The Court also finds that jurisdiction in Ohio over Barrett and Rutland is reasonable based on their transaction of business with plaintiff in Ohio.  "[A]ccording to Sixth Circuit

15

precedent, 'where the first two criteria are satisfied, only the unusual case will not meet this third criterion.'" *Int'l Paper Co. v. Goldschmidt*, 872 F.Supp. 2d 624, 633 (S.D. Ohio 2012) (Black, J.) (quoting *Aristech Chem. Int'l Ltd. v. Acrylic Fabricators Ltd.*, 138 F.3d 624, 628 (6th Cir. 1998) (citations omitted)).  In determining reasonableness, the Court must balance three factors: "the burden on the defendant, the interests of the forum [s]tate, and the plaintiff's interest in obtaining relief.'" *Fortis,* 450 F.3d at 223 (quoting *City of Monroe Emp. Ret. Sys. v. Bridgestone*, 399 F.3d 651, 666 (6th Cir. 2005) (quoting *Asahi*, 480 U.S. at 113)).

Barrett and Rutland have failed to allege facts that the imposition of jurisdiction in Ohio would cause an unreasonable burden upon them.  Further, Ohio has an interest in ensuring that business is conducted fairly and legally within its borders and Plaintiff has an interest in pursuing relief for his alleged damages that resulted from Barrett and Rutland's transaction of business with him in Ohio.  Accordingly, both the Ohio long-arm statute and the Due Process Clause are satisfied, and personal jurisdiction is proper over Barrett and Rutland.

## IV.   CONCLUSION

Based on the foregoing, Defendants Barrett and Rutland's Motions to Dismiss (Docs. 36 and 37) are **DENIED**.  The Clerk shall **REMOVE** Documents 36 and 37 from the Court's pending motions list.

**IT IS SO ORDERED.**

  _/s/ George C. Smith_____
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**