UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


**JOHN F. KENDLE,**

    **Plaintiff,**

  v.                                    Case No. 2:15-cv-1295
                                            JUDGE GEORGE C. SMITH
                                            Magistrate Judge Jolson

**WHIG ENTERPRISES, LLC,** *et al.***,**

    **Defendants.**


## OPINION AND ORDER

This matter is before the Court upon the Motions for Summary Judgment of Defendants Jason Rutland (Doc. 139), Rx Pro of Mississippi, Inc. (Doc. 140), and Mitchell Chad Barrett (Doc. 145), as well as Plaintiff John Kendle's Motion to Defer Ruling Defendant Rx Pro of Mississippi, Inc.'s Motion for Summary Judgment (Doc. 150). The motions are fully briefed and ripe for disposition.[1] For the following reasons, all three summary judgment motions are **GRANTED**. Kendle's motion to defer ruling on Rx Pro of Mississippi's motion is **DENIED**.

### I.    BACKGROUND

**A.    Kendle and WHIG enter into the Distributor Consultant Agreement**

This case arises out of the alleged wrongful termination of the business relationship between Plaintiff and Defendants. Kendle has been in the business of selling pharmaceutical and medical devices for approximately 20 years. (Doc. 144-12, Kendle Dep. at 6). In the summer of 2013, Kendle was approached by Defendants Mitchell Chad Barrett and Jason Rutland about the

---
[1] Defendant Mitchell Chad Barrett did not file a reply in support of his motion for summary judgment, but the time to do so has now closed.

possibility of working as a distributor for one of their companies, Defendant WHIG Enterprises, LLC, which also does business under the name WHIG, LLC. (*Id.* at 9; Doc. 114, 2nd Am. Compl. ¶ 1). WHIG is in the business of manufacturing and marketing medical and pharmaceutical products, including compounded medications. (Doc. 114, 2nd Am. Compl. ¶ 6). Kendle entered into a Distributor Consultant Agreements ("DCA") with "WHIG, LLC and affiliates, Florida entities" on August 27, 2013. (Doc. 114-13). Under the DCA, Kendle was to receive commissions based on the volume of sales he generated for WHIG. (*Id.*). The DCA had an initial term of three years, ending in August 2016, unless one of the parties terminated the agreement early on the basis of certain limited circumstances. (*Id.* § 4).

Defendant Rx Pro of Mississippi, Inc. operates a retail pharmacy under the name "McDaniel Pharmacy" in Port Gibson, Mississippi. (Doc. 141, West Aff. ¶ 9). While it is an affiliate of WHIG, and filled prescriptions for WHIG medications, Rx Pro of Mississippi has never operated in, been incorporated in, or registered to do business in Florida. (*Id.* ¶ 6). Rx Pro of Mississippi first began filling prescriptions for compounded medications in the summer of 2014, after Kendle's relationship with Defendants ended. (*Id.* ¶ 9).

To further his sales goals under the DCA, Kendle built a sales team with a focus on WHIG's compounded medications. (Doc. 114-12, Kendle Dep. at 29–30, 45). The sales team worked for and was paid by Kendle, not WHIG or any of its affiliates. (*Id.* at 30). When Kendle or one of his sales representatives generated a sale of one of WHIG's compounded prescription medications, prescriptions would then be sent either to WHIG's central pharmacy in Jackson, Mississippi or directly to another pharmacy in the state where the doctor practiced to be filled. (*Id.* at 31, 35–36; Doc. 144-10, Froehlich Dep. at 48–49). Kendle then received a commission on

the sale from WHIG, and Kendle would pass on part of that commission to the sales representative who generated the sale. (Doc. 114-12, Kendle Dep. at 32–33).

**B.     Other business dealings between Kendle, WHIG, and its affiliates**

Kendle also entered into a Memorandum of Understanding, referred to by the parties as an "Original Stockholder Agreement" ("OSA"), with WHIG, LLC on August 27, 2013. (Doc. 114-14). The OSA provided that Kendle would receive a membership interest in a limited liability company to be formed under the laws of West Virginia as part of WHIG's "BAMBR" program. (*Id.*). Under the BAMBR business model, WHIG compensated physicians and other healthcare providers who prescribed WHIG products to their patients by offering the providers ownership interests in BAMBR Marketing Groups. (Doc. 114, 2nd Am. Compl. ¶ 22). However, it does not appear that BAMBERWV, LLC was ever created in West Virginia. Kendle also alleges that he signed up three physicians for the BAMBR program, which "led to the creation of other, separate, legal entities." (Doc. 149-1, Kendle Decl. ¶ 11). It was Kendle's understanding that he would receive ownership interest in all BAMBR entities created by WHIG. (Doc. 144-12, Kendle Dep. at 24, 53).

Additionally, Kendle introduced Barrett and Rutland to James Kodman, a licensed pharmacist in Indiana, Pennsylvania, which led to a business relationship between WHIG and Kodman, creating a profitable compounding pharmacy business in Indiana, Pennsylvania in 2014. (Doc. 114–17, Kodman Dep. at 21, 43–44). Kendle alleges that Barrett and Rutland promised him an ownership interest in this Pennsylvania pharmacy. (Doc. 149-1, Kendle Decl. ¶ 12).

**C.     WHIG terminates the DCA**

All was well between the parties until February 25, 2014, when Kendle organized a meeting of WHIG distributors in Atlanta. (Doc. 114-12, Kendle Dep. at 47–48, 51). Following

this meeting, some of the distributors reported to Barrett and Rutland that Kendle had tried to organize the distributors to demand more commissions from WHIG; otherwise, they would leave as a bloc for one of WHIG's competitors. (Doc. 144-20, Rutland Dep. at 34, 49; Doc. 144-12, Kendle Dep. at 71). Barrett and Rutland considered Kendle's actions in connection with this meeting to permit early termination of the DCA under § 4.2, which provides that WHIG may terminate the DCA "immediately without notice at any time for . . . conflict of interest or competitive business activities where as determined by [WHIG] in its reasonable discretion, shall cause material harm . . . to [WHIG] or any Affiliate's interest." (Doc. 114-13). As a result, WHIG severed ties with Kendle. (Doc. 114-20, Rutland Dep. at 34).

After WHIG terminated the DCA, Rutland contacted several members of Kendle's sales team to let them know Kendle would no longer be working with WHIG, but that the sales team could now work directly for WHIG. (Doc. 151-3, Lee Dep. at 12–17; Doc. 144-10, Froelich Dep. at 10–12, 14–15). Several members of Kendle's sales team then began working for WHIG, continuing their sales efforts for WHIG's compounded medications. (Doc. 151-3, Lee Dep. at 16–17; Doc. 144-10, Froelich Dep. at 37–38). Although Kendle was no longer generating new prescription sales for WHIG, many of the compounded prescriptions that originated with Kendle or his sales team continued to be refilled by WHIG-affiliated pharmacies through 2016. (Doc. 149-1, Kendle Decl. ¶ 24). Kendle alleges that Rx Pro of Mississippi was one of these pharmacies that processed refills of compounded prescriptions originating with Kendle. (*Id.* ¶ 27).

Kendle commenced this action on April 15, 2015. In his Second Amended Complaint, Kendle brings claims for (1) breach of the DCA (against all defendants); (2) breach of the OSA (against all defendants); (3) breach of an agreement to provide Kendle with an ownership interest

4

in the Pennsylvania pharmacy business (against Barrett and Rutland); (4) unjust enrichment (against all defendants); (5) tortious interference with Kendle's business relationships with his sales team (against all defendants); and (6) spoliation of computer servers containing discoverable information (against Rutland). Defendants Rutland, Barrett, and Rx Pro of Mississippi, Inc. now move for full or partial summary judgment. Defendant WHIG has not sought summary judgment on any of the claims against it.

## II. SUMMARY JUDGMENT STANDARD

Defendants move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Berryman v. SuperValu Holdings, Inc.*, 669 F.3d 714, 716–17 (6th Cir. 2012). The Court's purpose in considering a summary judgment motion is not "to weigh the evidence and determine the truth of the matter" but to "determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A genuine issue for trial exists if the Court finds a jury could return a verdict, based on "sufficient evidence," in favor of the nonmoving party; evidence that is "merely colorable" or "not significantly probative," however, is not enough to defeat summary judgment. *Id.* at 249–50.

The party seeking summary judgment shoulders the initial burden of presenting the court with law and argument in support of its motion as well as identifying the relevant portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). If this initial burden is satisfied, the burden then shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *see also Cox v.*

*Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (after burden shifts, nonmovant must "produce evidence that results in a conflict of material fact to be resolved by a jury").

In considering the factual allegations and evidence presented in a motion for summary judgment, the Court "views factual evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). But self-serving affidavits alone are not enough to create an issue of fact sufficient to survive summary judgment. *Johnson v. Washington Cty. Career Ctr.*, 982 F. Supp. 2d 779, 788 (S.D. Ohio 2013) (Marbley, J.). "The mere existence of a scintilla of evidence to support [the non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Anderson,* 477 U.S. at 251.

## III. DISCUSSION

Defendants Rutland, Barrett, and Rx Pro of Mississippi have all moved for summary judgment on Kendle's breach of contract claims; and Defendants Barrett and Rx Pro of Mississippi have also moved for summary judgment on Kendle's claims for tortious interference and unjust enrichment. The Court will address each claim in turn.

### A. Breach of contract

Kendle alleges the Defendants have breached the DCA, the OSA, and an agreement to provide him with an ownership interest in the Pennsylvania pharmacy business. The problem with Kendle's claims against the moving Defendants is that none of them were parties to any of these contracts.

The DCA states that it is "made and entered into by WHIG, LLC and affiliates, Florida entities (hereinafter 'The Company') and John Kendle, or his assigns (hereinafter 'Consultant')." (Doc. 114-13 at 1). The OSA states that it is "entered into . . . by and between WHIG, LLC and

6

John Kendle." (Doc. 114-14 at 1). Moreover, Kendle confirmed at deposition that these are "the only two contracts [Kendle has] with [WHIG] or any of their affiliates related to [his] work for [WHIG]." (Doc. 114-12, Kendle Dep. at 146). Accordingly, Kendle has not identified any contracts between himself and any of Rutland, Barrett, or Rx Pro of Mississippi.[2]

The DCA has a Florida choice of law provision, and Rx Pro of Mississippi argues that the OSA should be subject to West Virginia law because it contemplates the creation of a West Virginia limited liability corporation. But under the law of any state, no breach of contract claim will lie in the absence of a valid contract between the plaintiff and the defendant. *See*, *e.g.*, *In re Standard Jury Instructions—Contract & Bus. Cases*, 116 So. 3d 284, 306 (Fla. 2013) (Florida law); *Sneberger v. Morrison*, 235 W. Va. 654, 669, 776 S.E.2d 156, 171 (2015) (West Virginia law); *Carbone v. Nueva Constr. Grp., L.L.C.*, 2017-Ohio-382, ¶ 14, 83 N.E.3d 375, 380 (8th Dist.) (Ohio law); *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 635 Pa. 427, 445, 137 A.3d 1247, 1258 (2016) (Pennsylvania law).

Kendle's failure to identify a contract between himself and any of the moving Defendants is therefore fatal to his contract claims against those Defendants. This is so even though Kendle alleges (a) that Rutland and Barrett owned many business entities, (b) that Rutland and Barrett did not always make it clear which of their entities they were representing during their business dealings with Kendle, and (c) that Kendle subjectively believed he was transacting business with Rutland and Barrett as individuals. (Doc. 149-1, Kendle Decl. ¶ 9). Nor can Kendle rescue his claims by citing agency principles that make an agent personally liable for contracts entered into on behalf of an undisclosed principal. (Doc. 149, Kendle's Mem. in Opp. at 15). The written

---

[2] Although the DCA is entered into between Kendle and WHIG "and affiliates, Florida entities," Rx Pro of Mississippi, Inc. is a Mississippi corporation with a principle place of business in Mississippi, and has never operated in, been incorporated in, or registered to do business in Florida. (Doc. 141, West Aff. ¶ 6). Rx Pro of Mississippi is therefore not included among the "affiliates" who may be party to the DCA.

7

DSA and OSA contracts clearly specify with which entities Kendle was contracting: WHIG, its Florida entity affiliates, and no one else. Rutland and Barrett were therefore neither parties to the contracts nor agents acting for undisclosed principals.

Accordingly, Rutland, Barrett, and Rx Pro of Mississippi are entitled to summary judgment on all of Kendle's breach of contract claims.

**B.     Tortious interference**

The parties appear to be in agreement that Mississippi law governs Kendle's tort claims. (Doc. 140, Rx Pro of Mississippi's Motion at 13–14; Doc. 145, Barrett's Motion at 9; Doc. 149, Kendle's Mem. in Opp. at 8 n.3). Under Mississippi law, the elements of tortious interference with a contract are:

> (1) that the acts were intentional and willful; (2) that they were calculated to cause damage to the plaintiffs in their lawful business; (3) that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); and (4) that actual damage and loss resulted.

*Coleman & Coleman Enterprises, Inc. v. Waller Funeral Home*, 106 So. 3d 309, 315–16 (Miss. 2012). Mississippi also recognizes a cause of action for tortious interference with non-contractual business relationships, using the same elements. *MBF Corp. v. Century Bus. Commc'ns, Inc., A Subsidiary of Century Tel. Enterprises, Inc.*, 663 So. 2d 595, 598 (Miss. 1995).

To establish tortious interference, "a showing of specific intent is not required. Rather, intent can be inferred when a defendant knows a contract exists between two parties and does a wrongful act that he is certain or reasonably certain will interfere with the contract." *Neider v. Franklin,* 844 So.2d 433, 437 (Miss. 2003) (citing *Cranford v. Shelton,* 378 So.2d 652, 655 (Miss. 1980)).

8

Kendle undisputedly had existing business relationships with his sales team to generate sales of compounded medications.  Two of Kendle's sales representatives, Mandy Lee and James Froelich, testified at deposition that they were contacted by email and telephone by Rutland, who stated that Kendle would no longer be working with WHIG, but that the sales team could now work directly for WHIG. (Doc. 151-3, Lee Dep. at 12–17; Doc. 144-10, Froelich Dep. at 10–12, 14–15).  Several members of Kendle's sales team then began working for WHIG, continuing their sales efforts for WHIG's compounded medications. (Doc. 151-3, Lee Dep. at 16–17; Doc. 144-10, Froelich Dep. at 37–38).

While these facts might be sufficient to prevent summary judgment against Rutland or WHIG (if either had moved for judgment on this claim), Kendle has identified no actions taken by Barrett or Rx Pro of Mississippi to interfere with the business relationships with his sales team.  Barrett and Rx Pro of Mississippi are therefore entitled to summary judgment on Kendle's tortious interference claim.

## C. Unjust enrichment

To collect under an unjust enrichment or quasi-contract theory in Mississippi, the claimant must show "there is no legal contract[,] but [ ] the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain, but should deliver to another." *Ellis v. Anderson Tully Co.*, 727 So. 2d 716, 719 (Miss. 1998). Mississippi also restricts application of the theory to cases in which the defendant received payment from the plaintiff by mistake:

> Money paid to another by mistake of fact, although such mistake may have been caused by payor's negligence, may be recovered from the person to whom it was paid, in an action for money had and received. The ground on which recovery is allowed is that one receiving money paid to him by mistake should not be allowed to enrich himself at the expense of the party who paid the money to him by retaining it, but in equity and good conscience should refund it. In order that this rule may apply, the party to whom the payment mistake was made must be left in

9

> the same situation after he refunds it as he would have been left had the payment to him not been made.

*Union Nat'l Life Ins. Co. v. Crosby*, 870 So. 2d 1175, 1180 (Miss. 2004). *See also Willis v. Rehab Sols., PLLC*, 82 So. 3d 583, 588 (Miss. 2012) ("[O]ur law is clear on unjust enrichment—it is based upon a mistaken payment, and it applies only where no legal contract exists.").

Kendle has sought three categories of recovery for unjust enrichment: (1) unpaid sales commissions for prescriptions originating with Kendle and his sales team for January 2014 through 2016; (2) unpaid profits from the BAMBR program; and (3) unpaid profits from the Pennsylvania pharmacy business. The first two categories are governed by contracts: the DCA and the OSA, respectively. Thus, Kendle's only recourse to recover those damages would be through a claim for breach of those contracts. And although neither Barrett nor Rx Pro of Mississippi were parties to those contracts, any benefit they would have received from Kendle would be derivative of those contracts through their affiliation with WHIG.

Even in the absence of a contract, Kendle's unjust enrichment claim would still not succeed. Indeed, as to the third category, Kendle has not identified any written contract providing him with an interest in the Pennsylvania pharmacy business, and he has confirmed that no contracts with WHIG or its affiliates exist outside of the DCA and OSA. (Doc. 114-12, Kendle Dep. at 146). Recovery of this category is therefore not barred by the existence of a contract. Kendle has not, however, offered any evidence or allegations that either of the moving Defendants received any payment from Kendle related to the Pennsylvania pharmacy business (or any other business dealings for which Kendle seeks damages) as a result of a mistake of fact. As Kendle's unjust enrichment claim is not "based upon a mistaken payment," Barrett and Rx Pro of Mississippi are entitled to summary judgment on this claim. *Willis*, 82 So. 3d at 588.

**D.    Motion to defer ruling on Rx Pro of Mississippi's summary judgment motion**

Kendle has also moved the Court to defer its ruling on Rx Pro of Mississippi's Motion for Summary Judgment. (Doc. 150). As grounds, Kendle asserts that he is currently awaiting the results of data extraction from one of WHIG's computer servers, which may confirm that Rx Pro of Mississippi filled or refilled compounded prescriptions that originated with Kendle or his sales team.

However, even if the server data confirm Kendle's expectation, Rx Pro of Mississippi would still be entitled to summary judgment on all of Kendle's claims against for the independent reasons explained above. There is therefore no need to defer ruling on Rx Pro of Mississippi's motion.

## IV.    CONCLUSION

For the foregoing reasons, the moving Defendants' motions for summary judgment are **GRANTED**. All three of Kendle's breach of contract claims are **DISMISSED** as against Rutland, Barrett, and Rx Pro of Mississippi. Kendle's tortious interference and unjust enrichment claims are **DISMISSED** as against Barrett and Rx Pro of Mississippi. All claims against WHIG and the tortious interference, unjust enrichment, and spoliation claims against Rutland remain pending.

Further, Kendle's Motion to Defer Ruling Defendant Rx Pro of Mississippi, Inc.'s Motion for Summary Judgment is **DENIED.**

The Clerk shall remove Documents 139, 140, 145, and 150 from the Court's pending motions list.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　　　　　　*/s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**